UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JACQUELINE DUSSAULT, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION |
| MICHAEL ASTRUE, COMMISSIONER | ) NO. 08-11234-WGY |
| OF THE SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

YOUNG, D.J.                                             December 17,2009

## I. INTRODUCTION

Jacqueline Dussault ("Dussault") brings this action against

Michael J. Astrue, Commissioner of the Social Security

Administration (the "Commissioner").   Dussault seeks to have this

Court review and reverse, or in the alternative, remand the

Commissioner's decision denying Dussault's application for

Social Security Disability Insurance Benefits ("SSDIB").   The

Commissioner moves for an order affirming his final decision.

### A.   Procedural Posture

Dussault applied for SSDIB on February 27, 2006, alleging

disability since February 16, 2006.   Pl.'s Mem. in Supp. of Mot.

to Rev. or Rem. 3 [Doc. No. 8].   Dussault's application was

initially denied by the Social Security Administration on

November 17, 2006 and denied upon reconsideration on March 12,

2007.  Id.   On August 9, 2007, Dussault filed a request for a

hearing.  Id.   The hearing was held in Boston, Massachusetts on

March 6, 2008.  Id.   On March 27, 2008, the hearing officer

issued a decision denying Dussault's application for SSDIB.  The

Appeals Council denied Dussault's request for review.  Id. at 4.

Dussault filed her complaint with this Court on July 20,

2008 [Doc. No. 1].  The Commissioner filed his answer on November

12, 2008 [Doc. No. 3].  Dussault submitted her Motion to Reverse

or Remand [Doc. No. 7] and accompanying Memorandum [Doc. No. 8]

on April 8, 2008.  On May 27, 2009, the Commissioner filed a

Motion for an Order Affirming the Decision of the Commissioner

[Doc. No. 11] and an accompanying Memorandum [Doc. No. 12].

**B.   Facts**

Dussault is a 40-year old mother of two who is separated

from her husband and living in subsidized housing in Billerca,

Massachusetts.  Pl.'s Mem. in Supp. of Mot. to Rev. or Rem. 4.

Dussault has a high school diploma and a certificate in medical

billing.  Administrative Tr. at 5-6.  Dussault was last employed

as a medical billing clerk for Melrose Wakefield Hospital.  Pl.'s

Mem. in Supp. of Mot. to Rev. or Rem. 4.  She was fired from this

position on February 16, 2006 due to frequent absences resulting

from various physical and mental problems.  Id.

Dussault's extensive medical history indicates she complained of pain for many years before the alleged date she became disabled, which was also the day she was fired from Melrose Wakefield Hospital.  Id. at 5.  Dussault has been diagnosed with the following ailments, documented in the hearing record: (1) depression, anxiety, and panic attacks; (2) fibromyalgia; (3) temporomandibular joint pain; (4) irritable bowel syndrome ("IBS"); and (5) headaches.  Id.  In the course of her application for benefits, Dussault underwent examination by two doctors engaged by the Social Security Administration.  The examinations produced two Mental Residual Functional Capacity Assessments ("RFCs").  The first was performed by Dr. Jane Metcalf, on May 2, 2006.  Administrative R. at 305-17.  The second was performed by Dr. Edwin Davidson, on February 26, 2007.  Administrative R. at 415-32.

## C.   Federal Jurisdiction

This Court has jurisdiction to hear appeals from final orders or decisions of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).

## II.  ANALYSIS

### A. Standard of Review

Review of the Commissioner's Social Security determination is limited by section 405(g) of the Social Security Act, (the "Act") which provides that "[t]he findings of the Commissioner of

Social Security as to any fact, if supported by substantial

evidence, shall be conclusive." 42 U.S.C. § 405(g); <u>Richardson</u> v.

<u>Perales</u>, 402 U.S. 389, 401 (1971). <u>See also</u> <u>Manso-Pizarro</u> v.

<u>Secretary of Health and Human Servs.</u>, 76 F.3d 15, 16 (1st Cir.

1996) (per curiam).

The substantial evidence standard is satisfied when "a

reasonable mind, reviewing the evidence in the record as a whole,

could accept it as adequate to support [the Commissioner's]

conclusion."  <u>Ortiz</u> v. <u>Secretary of Health and Human Servs.</u>, 955

F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting <u>Rodriguez</u> v.

<u>Secretary of Health and Human Servs.</u>, 647 F.2d 218, 222 (1st Cir.

1981)).

The Commissioner is charged with making all credibility

determinations, factual inferences, and resolving all conflicts

in the evidence.  <u>Id.</u>  Accordingly, this Court must affirm a

decision reached by the Commissioner, "even if the record

arguably could justify a different conclusion, so long as it is

supported by substantial evidence."  <u>Rodriguez Pagan</u> v. <u>Secretary

of Health and Human Servs.</u>, 819 F.2d 1, 3 (1st Cir. 1987) (per

curiam) (citing <u>Lizotte</u> v. <u>Secretary of Health and Human Servs.</u>,

654 F.2d 127, 128 (1st Cir. 1981)).

Thus, this Court may overturn the Commissioner's denial of

benefits only if he has "committed a legal or factual error in

evaluating a particular claim." <u>Manso-Pizarro</u>, 76 F.3d at 16

(quoting <u>Sullivan</u> v. <u>Hudson</u>, 490 U.S. 877, 885 (1989)).

**B. Social Security Disability Standard**

An individual is considered disabled if she is "[unable] to

engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration promulgated a five-step

sequential analysis to determine whether a claimant is disabled.

<u>See</u> 20 C.F.R. § 404.1520. The hearing officer must determine:

(1) whether the claimant is engaged in substantial gainful

activity; (2) whether the claimant has a severe impairment; (3)

whether the impairment meets or equals a listed impairment; (4)

whether the impairment prevents the claimant from performing past

relevant work; and (5) whether the impairment prevents the

claimant from doing any other work considering the claimant's

age, education, and work experience. <u>Id.</u>

The claimant bears the burden in the first four steps to

show that she is disabled within the meaning of the Act.

<u>Goodermote</u> v. <u>Secretary of Health & Human Servs.</u>, 690 F.2d 5, 7

(1st Cir. 1982)(citing <u>Sherwin</u> v. <u>Secretary of Health and Human

Servs.</u>, 685 F.2d 1, 2 (1st Cir. 1982)). Once the claimant has

established that she is unable to return to her former

employment, the burden shifts to the Commissioner to prove the

fifth step, that the claimant is able to engage in substantial

gainful activity that exists in significant numbers in the

national economy.  Id.

**C.  The Hearing**

During the hearing, both her attorney and the hearing

officer questioned Dussault.  She admitted she had stopped taking

many of her medications both for financial reasons and potential

physiological and mental concerns.  Administrative Tr. at 14, 15,

22, 23, 27, 29.  Dussault testified that she performed housework

and shopping errands and organized her two children to attend

school every day.  Administrative Tr. at 18, 19, 20.  She stated

she slept for much of the day - due to difficulties sleeping at

night - rarely went out, had no hobbies, and received limited

financial support from her estranged husband, family, and

friends.  Administrative Tr. at 16, 17, 20, 21, 33.

An impartial Vocational Expert, Ruth Baruke ("Baruke") also

testified.  Baruke had reviewed the exhibits associated with the

hearing and testified as to Dussault's past relevant work.  She

classified Dussault's previous work as a medical clerk as

"sedentary, semi-skilled work."  Administrative Tr. at 35.  She

classified Dussault's prior work at a Christmas Tree shop as

"light, semi-skilled work."  Id.

The hearing officer then presented a hypothetical to Baruke, based on Dussault's physical and medical limitations, and asked whether that person could perform Dussault's previous work.  Id. at 35-36.  Baruke responded in the negative, but stated that other work existed in the national and regional economy for someone with her profile.  Id. at 36.  Jobs included electronics worker, of which there are 2,000 jobs in Massachusetts and 288,000 jobs nationally, and surveillance systems monitor, of which there are 3,518 jobs in Massachusetts and 40,000 jobs nationally.  Id. at 36.

**D.  The Decision**

The hearing officer made the following determinations: (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2009; (2) the claimant has not engaged in substantial gainful activity since February 16, 2006; (3) the claimant has the following severe impairments - major depressive disorder, panic/anxiety disorder, fibromyalgia, irritable bowel syndrome and temporomandibular joint syndrome; (4) the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526); (5) the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that while able to lift / carry twenty

7

pounds occasionally and ten pounds frequently, the claimant may sit for six hours of an eight hour day, stand for six hours of an eight hour day, and walk for six hours of an eight hour day.  She may frequently climb stairs and ramps, balance, kneel, reach vertically and horizontally, perform gross and fine manipulations, and push and pull.  She may occasionally climb ropes, ladders, and scaffolds, stoop, crouch, and crawl.  She may concentrate for two hour intervals, during the course of an eight hour day or a forty hour week.  She may perform 2-3 step tasks and may occasionally relate to coworkers, supervisors, and the public.  She may occasionally accept criticism.   She must perform simple (2-3 step) tasks in an unpressured setting.  The work setting must be consistent and must not require travel to unfamiliar places.  The claimant's workstation must be in close proximity to a rest room; (6) the claimant is unable to perform any past relevant work; (7) the claimant was born on March 8, 1969 and was 36 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date; (8) the claimant has at least a high school education and is able to communicate in English; (9) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills; (10) considering the claimant's age,

education, work experience, and residual functional capacity,

there are jobs that exist in significant numbers in the national

economy that the claimant can perform.    Decision at 3-9.

Consequently, the hearing officer found that the claimant

had not been under a disability, as defined in the Social

Security Act, from February 16, 2006 through the date of the

decision.  Decision at 10.

**E. Challenges to the Decision**

Dussault raises multiple challenges to the decision.

**1. <u>Did the hearing officer disregard the Vocational
Expert's testimony that Dussault was disabled?</u>**

During the hearing, the hearing officer posed the following

hypothetical to the Vocational Expert:

> Assume if you will that a hypothetical person who is of
> the same age, education, language and work background
> as the claimant.  Further assume that if there was work
> that this particular person could perform it would be
> subject to the following limitations.   This person
> would be able to sit for six hours out of an eight-hour
> day, stand for six hours out of an eight-hour [day] and
> walk for six hours out of an eight-hour day.  Would be
> able to lift and carry 20 pounds occasionally and ten
> pounds frequently.  There would be, that person would
> be able to climb stairs and ramps on a frequent basis,
> climb ropes, ladders and scaffolds . . . occasionally.
> Balance on a frequent basis.  Would be able to stoop,
> crouch and crawl on an occasional basis.  Would be able
> to kneel frequently, would be able to reach vertically,
> horizontally, perform gross and fine manipulation on a
> frequent basis.  That person would be able to push and
> pull on a frequent basis.  That, this person would be
> able to maintain concentration, persistent (sic) and
> pace for two-hour increments over an eight-hour day,
> forty hours a week.  This person would occasionally be

able to relate to co-workers, supervisors and the pubic and would occasionally be able to accept criticism. This person would be able to also perform only simple tasks . . . defined as two to three step tasks and they would be able to perform these only in an unpressured setting.  This person would need a consistent setting, not requiring travel in unfamiliar places.  Would that person be able to perform any of claimant's past relevant work?

Administrative Tr. at 35-36.  The Vocational Expert responded that while such a person could not perform the claimant's past relevant work, such a person could find work in the national economy, i.e., was not disabled.  Administrative Tr. at 36.  The hearing officer then altered the hypothetical, shortening the period that the subject could maintain concentration, persistence and pace to one hour increments over an eight hour day. Administrative Tr. at 36-37.  The Vocational Expert responded that "in most jobs you need to be able to stay at a site for periods of two hours.  Particularly these type of unskilled jobs."  Administrative Tr. at 37.

Dussault claims that the Vocational Expert's response to the amended hypothetical essentially was a determination that Dussault was disabled.  Pl.'s Mem. in Supp. of Mot. to Rev. or Rem. 13.  Dussault argues the hearing officer committed legal error when he "disregarded, without comment, the [Vocational Expert's] opinion."  Id. at 15.

A hearing officer may not disregard, without comment, the opinion of an expert and must address his disagreement with the

opinion rendered within the hearing decision.  "[T]he [hearing officer is] not at liberty to ignore medical evidence or substitute his own views for an uncontroverted medical opinion." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

Here, however, the Vocational Expert's response hardly constitutes an unequivocal determination of disability.  The Vocational Expert stated that "most," but not "all" jobs would require an employee to stay on site for two hours.

Moreover, the unamended, "two-hour" hypothetical reflected Dr. Metcalf's RFC assessment, which stated that Dussault was not significantly limited in her ability to maintain concentration and persistence for an extended period and that she had the ability to do so for two hours at a time, eight hours a day, forty hours per week.  Administrative R. at 315-317.  Therefore, the testimony elicited from the Vocational Expert based upon the original hypothetical properly supported by "substantial evidence," is in itself enough to support the ultimate conclusion.

### 2. Was the amended "one-hour" hypothetical without basis in the record?

Dussault next attacks the amended hypothetical that she previously argued formed a basis for finding her disabled. Dussault alleges that amended hypothetical, which limited concentration, persistence and pace to one-hour increments over

11

an eight hour day, is without basis in the record.  Pl.'s Mem. in
Supp. of Mot. to Rev. or Rem. 18.

Dussault is correct that this second,"one-hour" hypothetical
is not supported by the record.  It is, therefore, not relevant.

Because the hearing officer's first hypothetical is
supported by substantial evidence, and his second hypothetical
must be disregarded as irrelevant, he committed no legal error in
basing his determination on the Vocational Expert's response to
the first hypothetical.

### 3.  <u>Was the hypothetical flawed because it failed to address the additional moderate mental occupational restrictions contained in the RFC?</u>

Dussault argues that the hypothetical was improper because,
although it included her inability to maintain attention and
concentration, it did not address the additional occupational
restrictions documented in her RFC.  Pl.'s Mem. in Supp. of Mot.
to Rev. or Rem. 19.

"[I]n order for a vocational expert's answer to a
hypothetical question to be relevant, the inputs into that
hypothetical must correspond to conclusions that are supported by
the outputs from the medical authorities."  <u>Arocho</u> v. <u>Secretary
of Health and Human Servs.</u>, 670 F. 2d 374, 375 (1st Cir. 1982).
To guarantee that congruence, the hearing officer "must both
clarify the outputs (deciding what testimony will be credited and

12

resolving ambiguities), and accurately transmit the clarified
output to the expert in the form of assumptions."  <u>Id.</u>

The RFC includes four categories that summarize the
conclusions derived from the medical evidence on file.
Administrative R. at 315-316.  They are (1) understanding and
memory; (2) sustained concentration and persistence; (3) social
interaction; and (4) adaptation.  <u>Id.</u>

Both Drs. Metcalf and Davidson found that Dussault had no
significant limitation and no evidence of limitation in
understanding and memory.  Administrative R. at 315, 430.

In the social interaction category, Dussault was found to
have moderate limitations on her ability to interact
appropriately with the general public, to accept instructions,
and respond appropriately to criticism from supervisors.
Administrative R. at 316, 431.  The hearing officer adequately
addressed Dussault's "social interaction" limitations in his
hypothetical when stating: "This person would occasionally be
able to accept criticism.  This person . . . would be able to
also perform only simple tasks . . . in an unpressured setting."
Administrative Tr. at 35-36.

In the adaptation category, Dussault was found to have
moderate limitations on her ability to respond appropriately to
changes in the work setting and to travel in unfamiliar places or
use public transportation.  Administrative Tr. at 316, 431.   The

hearing officer specifically addressed Dussault's "adaptation"
limitations in his hypothetical when stating: "This person would
need a consistent setting, not requiring travel in unfamiliar
places."  Administrative Tr. at 36.

In the sustained concentration and persistence category,
Dussault was assessed to have moderate limitations on her ability
to carry out detailed instructions, maintain attention and
concentration for extended periods, perform activities within a
schedule, maintain regular attendance and be punctual within
customary tolerances. Dussault was also found to be moderately
limited in her ability to work in coordination with or in
proximity to others without being distracted by them, to complete
a normal work day or work week without interruptions from
psychologically based symptoms and to perform at a consistent
pace without an unreasonable number and length of rest periods.
Administrative R. at 315-16, 430-31.  In her RFC summary, Dr.
Metcalf noted that Dussault could work with a "supportive
supervisor" and could work in a "low stress work setting."
Administrative R. at 317.  In his RFC summary, Dr. Davidson noted
that Dussault "would have difficulty dealing with the public and
with critical supervision, but could function in an unpressured
setting."  Administrative R. at 432.

Although this is the closest issue, this Court rules that the hypothetical presented to the Vocational Expert contained Dussault's pertinent limitations and thus, the hearing officer's findings were supported by substantial evidence.  The hearing officer addressed Dussault's sustained concentration and persistence limitations by stating "this person would be able to maintain concentration, persistent (sic) and pace for two-hour increments over an eight-hour day, 40 hours a week . . . perform only simple tasks . . . in an unpressured setting."  Admin Tr. at 35-36.

The hearing officer did not specifically address the moderate limitations on Dussault's ability to keep a regular schedule, be punctual, and work alongside others.  He did, however, describe an "unpressured setting" to the Vocational Expert, which a reasonable mind would normally construe to include these limitations, especially in light of Dr. Davidson's summary notes which used the term "unpressured."

Furthermore, the hearing officer ultimately held that Dussault was limited to work that required no more than occasional relations with the public, co-workers, and supervisors, demonstrating that he relied on evidence derived directly from the RFC in making his determination that Dussault was not disabled.

### 4. Was the hearing officer's limitation on the length of bathroom breaks based on "substantial evidence"?

During the hearing, Dussault testified that she may need two to four bathroom breaks during an eight-hour workday. Administrative Tr. at 28.  When questioning the Vocational Expert, the hearing officer further limited to his hypothetical, asking whether the two jobs the expert had mentioned in her response were assumed to have a bathroom in close proximity to the worksite, and whether the jobs would allow for taking unscheduled bathroom breaks that might last for five to eight minutes.  Administrative Tr. at 37.  The Vocational Expert responded affirmatively to both questions.  Id.  Dussault's attorney, in a follow-up hypothetical, asked the Vocational Expert whether unscheduled bathroom breaks lasting up to fifteen minutes would limit the jobs available.  Administrative Tr. at 38.  The Vocational Expert responded "[y]es, I mean it's starting to get, get more, you know you're talking then about fifteen, up to an hour of time where she's disappearing from her job."  Id. at 38.

Dussault argues that the hearing officer committed reversible error when he failed to establish with substantial evidence why a person suffering with chronic IBS would require unscheduled bathroom breaks lasting no more than "five to eight minutes."  Pl.'s Mem. in Supp. of Mot. to Rev. or Rem. 17.

Dussault asserts that by suggesting a duration for bathroom
visits, the hearing officer substituted his own views or ignored
medical evidence.  Id.

While a hearing officer is not at liberty to ignore medical
evidence or substitute his own views for an uncontroverted
medical opinion,  Nguyen, 172 F.2d at 35, "subjective symptoms
must be evaluated with due consideration for credibility,
motivation, and medical evidence of impairment."  Gray v.
Heckler, 760 F. 2d 369, 374 (1st Cir. 1985) (citing Alvarado v.
Weinberger, 511 F.2d 1046, 1049 (1st Cir. 1975) (per curiam)).

Dussault did not testify as to the length of bathroom breaks
dictated by her IBS, and the record contains no documentary
evidence establishing a typical length for her bathroom breaks.
Dussault's attorney's suggestion that her bathroom breaks could
be fifteen minutes in length was without basis in the record.
Furthermore, the hearing officer found Dussault not entirely
credible.  He noted that "the claimant's statements concerning
the intensity, persistence and limiting effects of [her] symptoms
are not credible to the extent they are inconsistent with the
residual functional capacity assessment."  Decision at 9.

The hearing officer neither ignored medical evidence nor
substituted his own views for an uncontroverted medical opinion.
In the absence of any medical opinion or evidence regarding the

17

length of bathroom breaks, he simply used his common sense in

posing the first hypothetical.  He properly relied on his

assessment of Dussault's credibility and motivations in rejecting

the Vocational Expert's response to Dussault's attorney's

hypothetical.

## III. <u>CONCLUSION</u>

Because the finding that Dussault is not disabled was

supported by substantial evidence, this Court affirms the

Decision of the Commissioner of the Social Security

Administration.  Judgment shall enter for the defendant.

SO ORDERED.

By the Court,

<u>/s/ William G. Young</u>
WILLIAM G. YOUNG
DISTRICT JUDGE